**Chung Sai ZHENG, Petitioner,**

v.

Alberto GONZALES,* Attorney General
of United States, Respondent.

Docket No. 02–8425–AG.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 7, 2005.

Decided: March 3, 2006.

Alan Michael Strauss, Law Office of
Alan M. Strauss, New York, N.Y., for Peti-
tioner.

David J. Kennedy, Assistant United
States Attorney for David N. Kelley, Unit-
ed States Attorney for the Southern Dis-
trict of New York (Sara L. Shudofsky,
Assistant United States Attorney, on the
brief), New York, N.Y., for Respondent.

Before: McLAUGHLIN, CALABRESI,
and B.D. PARKER, Circuit Judges.

PER CURIAM.

Petitioner Chung Sai Zheng, a native
and citizen of the People's Republic of
China, seeks review of the Board of Immi-
gration Appeals ("BIA") decision refusing

---

* Pursuant to Federal Rule of Appellate Proce-
dure 43(c)(2), Attorney General Alberto R.
Gonzales is automatically substituted for for-
mer Attorney General John Ashcroft as a re-
spondent in this case.

his application for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231. The Immigration Judge ("IJ") found petitioner incredible and, on that basis, denied his asylum petition. The BIA subsequently affirmed the decision without opinion. On appeal, petitioner contends that the IJ's adverse credibility findings lacked substantial evidence. We agree. Of the reasons that the IJ did not herself discount, some reflected clear misrepresentations of the record, and others were too "minor and isolated" to support an adverse credibility ruling. We, therefore, vacate the BIA's decision, except its grant of voluntary departure, and remand the case for reconsideration.

## BACKGROUND

Petitioner left China and entered the United States in April 1993. Six months later, in October 1993, he filed an I–589 application stating that he had fled his native country because he and his wife had three children in violation of China's family planning policies. Petitioner's original application indicated that his wife had been forced to implant an intrauterine device ("IUD") shortly after they had their second child, but that the IUD had accidentally fallen out sometime in 1986, shortly before his wife became pregnant with their third child.

In August 1997, after deportation proceedings had commenced, petitioner proffered a second statement that substantially amended the contents of his first I–589 application.[1] Although petitioner's 1997 statement maintained that his wife had been required to wear an IUD after the birth of their second child, the second statement supplied a different explanation for the removal of the IUD. Specifically, it claimed that petitioner had been forced to undergo a vasectomy on May 15, 1986, and that after the procedure, local officials granted petitioner's request that his wife be allowed to remove her IUD now that he had been sterilized. According to the 1997 declaration, however, the vasectomy apparently proved unsuccessful, and petitioner's third child was born on May 12, 1987.

At petitioner's asylum hearing before the IJ, petitioner insisted that he had been sterilized and offered a description of the alleged procedure. Dr. Peter Yong, who examined petitioner on July 22, 1997, testified on his behalf. Dr. Yong stated that he had conducted a physical examination of petitioner and had found scars consistent with a vasectomy procedure. He also explained that a semen analysis indicated that, although his sperm count was well below normal limits, petitioner did have some sperm left, indicating that the sterilization procedure had not been entirely effective.

---

1. In his 1997 declaration, petitioner disclaimed much of his I–589 application, stating that he was unaware of the contents of the earlier filing:

The application for political asylum, previously submitted to the Immigration and Naturalization Service was prepared by an agency. It is my understanding that the application filed on my behalf was not prepared by an attorney. When I went to apply for asylum, I explained to the preparer that I had problems with the family planning policy in China and that I had been sterilized. I was asked some biographical information and then told by the preparer that he had enough information or the application.

There is a statement attached to the application for political asylum. This statement was prepared after the interview I had with the preparer. I was not aware of the contents of the statement before I applied for political asylum. I was not read the statement in my native language before the application was filed. There is information on the statement that is not correct. I hereby amend the previously filed I–589.

At the end of the hearings, the IJ issued an oral opinion on October 26, 1998, denying petitioner's asylum claim on adverse credibility grounds. To justify her credibility ruling, the IJ raised a series of concerns with petitioner's testimony. First, the IJ observed that petitioner had not mentioned a forced sterilization in his original asylum application. Second, she stressed the conflicting explanations petitioner had presented for the removal of his wife's IUD. Third, the IJ claimed that petitioner had stated that his "belly" and muscles were cut open during the sterilization, whereas Dr. Yong, who examined petitioner and testified on his behalf, could not verify petitioner's supposed description of the surgery. Also, the IJ pointed out that petitioner had testified that his third child was born in the town of Shaxi, but the child's birth certificate lists Changle as the place of birth. Moreover, the IJ was troubled by what she perceived to be petitioner's shifting explanations for why officials suddenly insisted that he undergo a sterilization seven years after the birth of his second child. In addition, according to the IJ, the State Department's 1998 country profile of China conflicted with petitioner's assertion that the unheralded visit by family planning officials in 1986 reflected a change in government policy. Finally, the IJ found petitioner's claim—that he was sterilized in May 1986—dubious, given that his wife had a child a year later in May 1987. For these reasons, the IJ concluded that petitioner was not credible and denied his application for asylum and withholding of deportation. She granted petitioner's application for voluntary departure.

On November 26, 2002, the BIA summarily affirmed the IJ's decision in full. Petitioner now appeals the denial of his application.

## DISCUSSION

■ Where, as here, the BIA summarily affirms an IJ's opinion, we review the reasoning and decision of the IJ directly. *See Dhoumo v. BIA*, 416 F.3d 172, 174 (2d Cir.2005) (*per curiam*) (citing *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003)). We typically afford "particular deference" to an IJ's credibility finding, "mindful that the law must entrust some official with responsibility to hear an applicant's asylum claim, and the IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004). Accordingly, our review of an IJ's credibility determination is an "exceedingly narrow inquiry to ensure that the IJ's conclusions were not reached arbitrarily or capriciously." *Id.* at 74 (internal quotation marks and citations omitted). An IJ's credibility findings cannot, however, be based upon either "a misstatement of the facts in the record [or] bald speculation or caprice." *Id.* (internal quotation marks and citations omitted).

■ In the instant case, we find that none of the reasons supplied by the IJ to support her adverse credibility ruling are free of error. The IJ herself discounted the significance of petitioner's failure to mention his alleged sterilization in his 1993 application. In fact, the IJ accepted petitioner's explanation for the omission, and stated that the supposed inconsistency was, by itself, insufficient to impugn petitioner's credibility: "[T]his discrepancy alone would not be so important ... but for the fact that there are other far more serious discrepancies." But the second supposed discrepancy on which the IJ places greater emphasis—that petitioner's 1993 and 1997 written submissions contain different descriptions of the circumstances surrounding the removal of his wife's

IUD—admits the very same explanation, which the IJ had previously and expressly characterized as "plausible." The IJ gave no reason why petitioner's assertion that he was unfamiliar with the contents of his 1993 application would, on the one hand, adequately explain why there is no mention of petitioner's alleged sterilization in his 1993 filing, but would not, on the other hand, also explain why the 1993 statement contained a different account of the removal of his wife's IUD than his later submission and subsequent testimony. On appellate review, we are not now in a position to supply such an explanation, which the IJ neglected to include. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

In addition, there is no record evidence, notwithstanding the IJ's suggestion to the contrary, that petitioner referred to his "belly" when describing the vasectomy he endured. The transcript from the asylum hearing indicates only that petitioner reported that doctors operated on the "bottom part of [his] body." Such manifest misconstrual of the record warrants reconsideration on remand. *See Chun Gao v. Gonzales*, 424 F.3d 122, 132 (2d Cir.2005). Though it is true that petitioner spoke of doctors operating on his "muscles" (while Dr. Yong testified that vasectomies do not require that any muscles be cut), this is the type of "relatively minor and isolated" inconsistency that is patently insufficient to support an adverse credibility finding. *See Diallo v. INS*, 232 F.3d 279, 288 (2d Cir.2000). Moreover, the IJ never disputes Dr. Yong's uncontested testimony that petitioner underwent a vasectomy; it is, therefore, unclear how these putative discrepancies in petitioner's testimony bear on the IJ's finding that petitioner is incredible. *See Zhang*, 386 F.3d at 80 ("We require the BIA to provide 'specific, cogent' reasons for an adverse credibility finding that 'bear a legitimate nexus to the

finding.'" (quoting *Secaida–Rosales*, 331 F.3d at 307)).

Equally minor and isolated is the apparent discrepancy in the birth certificate of petitioner's third child. Petitioner explained that even though his third child was born while his wife was hiding in Shaxi, government protocol required that Changle be listed on the birth certificate because that was the province and city to which his family was formally registered. Not only does petitioner provide a sensible explanation that the IJ fails to address, but the alleged inconsistency that petitioner seeks to reconcile is also "so plainly immaterial to a persecution claim that no reasonable fact-finder could use [it] as a basis for an adverse credibility ruling." *Zhang*, 386 F.3d at 77.

The IJ also erred in finding that petitioner modified his explanation for why authorities had waited to trouble his family until many years after the birth of their second child. Closer review of the transcript reveals that the IJ misunderstood the exchange between petitioner and the lawyer for the INS. As a result, the IJ failed to recognize that petitioner's purportedly conflicting accounts were the product of the government lawyer's confusing references to two different time periods. The INS attorney acknowledged the confusion himself, and subsequently clarified the relevant timeframe before resubmitting the question to petitioner.

The IJ similarly misconstrued the State Department's 1998 country profile in deciding that it contradicted petitioner's assertion that a 1986 change in policy prompted family planning officers unexpectedly to confront petitioner seven years after the birth of his second child. Although the 1998 profile states that China first "promulgated a comprehensive and highly-intrusive family planning policy" in

1979, the profile also reports (a sentence later) that the policy "has changed *over time*, and its implementation has varied from place to place." (emphasis added).

Finally, in order for us to credit the IJ's contention that petitioner was not credible because he and his wife conceived their third child approximately three months after petitioner's supposed sterilization, we would have to turn a blind eye to Dr. Yong's unrefuted testimony (1) that petitioner's vasectomy was not completely successful, as evidenced by the low (but not zero) sperm count found when petitioner was tested in July 1997, and (2) that even in "perfect" vasectomies, residual sperm can survive for 1–2 months after the procedure. Under the circumstances, we see no reason to ignore Dr. Yong's expert testimony—particularly because the IJ often relied on Dr. Yong's statements to undermine petitioner's testimony. Accordingly, the IJ's opinion that petitioner and his wife could not conceive a child a few months after a vasectomy is bald speculation and without support in the record. *See Zhang*, 386 F.3d at 80.

For the foregoing reasons, we find that substantial evidence does not support the IJ's decision.[2] Because the IJ has failed to justify his credibility finding on the basis of record evidence—but because we cannot say that a reasonable adjudicator would be compelled to conclude that petitioner is credible—we vacate the decision below and remand the case for further proceedings. *See Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003).

We have considered all of the government's arguments and find them to be without merit. The petition for review is therefore GRANTED, the denial of asylum and withholding of deportation is VACATED, and the case is REMANDED to the BIA for further consideration not inconsistent with this opinion.

---

**2.** Since all the bases of the IJ's credibility ruling either contain error or, for other reasons, do not provide substantial evidence to support the decision, we need not undertake the analysis prescribed in *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391 (2d Cir.2005), and *Xiao Ji Chen v. Dep't of Justice*, 434 F.3d 144 (2d Cir.2006), as to whether there was sufficient, and sufficiently powerful, substantial evidence so that despite the errors, we could "confidently predict that the IJ would necessarily reach the same result absent errors." *Cao He Lin*, 428 F.3d at 395.