04-4700-ag
Yan v. Mukasey

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: August 8, 2007)                                    Decided: December 4, 2007)

Docket No. 04-4700-ag

WENSHENG YAN,

*Petitioner,*

*-v.-*

MICHAEL B. MUKASEY, United States Attorney General,[*]

*Respondent.*

BEFORE:              CALABRESI, RAGGI, HALL, *Circuit Judges.*

Petition for review of a final decision of the Board of Immigration Appeals affirming the

denial by an Immigration Judge of the petitioner's application for asylum, withholding of

removal, and relief pursuant to the Convention Against Torture.

Petition for review denied.

STEWART ALTMAN, Mineola, NY (Liu Yu, Law Offices of Yu & Associates, New
York, NY, *on the brief*), *for Petitioner*.

MICHAEL J. EDNEY, U.S. Department of Justice, Office of Legal Counsel,
Washington, D.C. (Arnold B. Corsmeier, Judy K. Hunt, Assistant United States
Attorneys, *for* Paul I. Perez, United States Attorney, Middle District of Florida,
Jacksonville, Florida, *on the brief*), *for Respondent*.

---

[*]Attorney General Michael B. Mukasey is substituted for former Attorney General John
Ashcroft pursuant to Fed. R. App. P. 43(c)(2).

PER CURIAM:

Petitioner Wensheng Yan, a native and citizen of China, seeks review of the August 4, 2004 order of the Board of Immigration Appeals ("BIA") affirming the May 8, 2003 decision of Immigration Judge ("IJ") Michael W. Straus denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Wensheng Yan*, No. A79 431 371 (B.I.A. Aug. 4, 2004), *aff'g* No. A79 431 371 (Immig. Ct. Hartford May 8, 2003). Yan argues that the IJ's adverse credibility finding was not supported by substantial evidence in the record. Specifically, Yan takes issue with the IJ's finding that his story was inherently implausible, asserting that the actions found to be implausible did not go to the heart of his asylum claim. He also argues that the IJ failed to explain why those actions were implausible, and that the IJ impermissibly interpreted those actions from his own point of view. We conclude that the IJ's finding of inherent implausibility is supported by substantial evidence in the record.

## I. Background

Yan entered the United States in December 2001 after fleeing from China. He was served with a notice to appear in January 2002, and at an April 2002 hearing before an IJ he conceded removability and filed an application for asylum, withholding of removal, and CAT relief. Yan's application for relief asserted that he feared that he would be persecuted if he returned to China because he had violated China's family planning policy and had been threatened with forced sterilization. He explained that in October 1999, after the birth of his and his wife's first child, local government officials had forcibly inserted into his wife an intrauterine device ("IUD") which she later had removed by a private doctor. Thereafter, he claimed, his

2

wife became pregnant again, and local authorities forcibly aborted the pregnancy. The local officials then imposed a 10,000 yuan fine on Yan and his wife and ordered Yan to be sterilized. He refused to submit to sterilization.[1] Yan claimed that the local officials reported his refusal to his employer, and his employer "strictly criticized [him]" and urged him to pay the fine and to submit to sterilization. Add. to I-589. Faced with these threats, he asserted, he had no option but to leave China.

At a May 2003 hearing before IJ Straus, Yan's testimony on direct examination was consistent with the events described in his application. He elaborated in his testimony that after his wife's abortion on July 17, 2001, she was very tired and bleeding, and he took ten days off of work and stayed with her at their home. After direct and cross-examination, the government attorney and the IJ questioned Yan about the Chinese passport he had submitted into evidence, which was issued to Yan on June 15, 2001. Yan confirmed that he had gotten the passport before his wife's abortion because he planned to travel to Thailand. He also testified that he was earning 800 yuan per month before he left China and that he had no other job. Yan stated that on July 4, 2001, he applied for a visa to go to Thailand because he "[w]ant[ed] to go to Thailand for traveling," and that he was able to pay for the 2,900- yuan cost of the trip out of his father's retirement savings. 5/8/03 Tr. at 60. Yan repeated that the purpose of the Thailand trip, which lasted four days—from July 28, 2001, to August 1, 2001—was "[j]ust travel for vacation with the

---

[1] This Court's decision in *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007) (en banc) (holding that an applicant cannot secure asylum based on his or her spouse's persecution under China's family planning policy absent some evidence of the applicant's own resistance to the policy), does not foreclose Yan's application because he claims that he personally refused to submit to sterilization. Nevertheless, because the alleged persecution of Yan's wife was the predicate for his alleged resistance to sterilization, the IJ's implausibility finding as to that spousal persecution reasonably extended to Yan's personal resistance.

tour group." *Id.* at 61. When the IJ asked why he would go on a vacation after his wife had just had an abortion, Yan explained: "We have to pay in advance to buy the ticket to pay for the trip. Arrangement was made a long time ahead, so I had to go." *Id.* The IJ commented, "if my wife was sick in bed, I wouldn't be going traveling to other countries." *Id.* at 61-62. Yan countered that the ticket was not refundable.

The IJ then questioned Yan about two trips to Cuba—one only eight days after his return from Thailand and one in October 2001. Yan testified that the first trip cost 5,000 yuan and that he left China on August 9, traveled through France, stayed in Cuba for three days, and returned to China on August 15 at Guangzhou Airport. The IJ asked Yan why, if he was afraid the government was going to sterilize him, he returned to China. Yan explained that he had to return to China because he ran out of money. Yan also testified that he went to Cuba again in October for a month so that he could try to apply for asylum in the United States, but he returned to China through the Guangzhou Airport because his plan fell through. Yan later claimed that the purpose for the first trip to Cuba was "travel reasons" and not to seek asylum.

In an oral decision after the hearing, the IJ found Yan's testimony not credible for the following reasons: (1) it was improbable that Yan would take the July vacation trip to Thailand that cost him 2,900 yuan, which was the equivalent of over three months' salary, and the August vacation trip to Cuba that cost him 5,000 yuan, which was the equivalent of over six months' salary; (2) Yan's behavior—traveling to Thailand ten days after the abortion, when his wife was weak and bleeding, simply because he had paid for the trip in advance—was "inconsistent with the fact that his wife had a forced abortion"; (3) it was inconsistent with the circumstances ("out of character") that Yan's first trip to Cuba in August, which Yan testified was for "travel

4

reasons," occurred after he had received a letter threatening sterilization and a 10,000-yuan fine; (4) Yan's asylum application stated that he had gone into hiding after he had received the threatening letter, yet he spent a large amount of time outside the country on trips; (5) Yan's multiple return trips to China took him through Guangzhou Airport, where his identity would likely be checked; (6) Yan testified that he had no problems with his employer, yet his employer's dismissal notice was predicated on Yan's failure to undergo sterilization and pay a fine; and (7) the 2002 State Department Report was inconsistent with Yan's testimony that many individuals from Fujian Province were able to have extra children if they paid a fine. *In re Wensheng Yan*, No. A79 431 371 (Immig. Ct. Hartford May 8, 2003). The BIA affirmed the IJ's decision without opinion. *In re Wensheng Yan*, No. A79 431 371 (B.I.A. Aug. 4, 2004).

Yan petitions for review of the BIA's order.

## II. Discussion

### A. Standard of Review

Where, as here, the BIA affirms an IJ's decision without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g.*, *Twum v. INS*, 411 F.3d 54, 58 (2d Cir. 2005); *Yu Sheng Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 159 (2d Cir. 2004). This Court reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g.*, *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n.7 (2d Cir. 2004), *overruled in part on other grounds*, *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 305 (2d Cir. 2007) (en banc). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently

5

flawed. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir. 2005). In this case, the alleged flaw relates to the sufficiency of the evidence and the explanation supporting the IJ's finding that the petitioner's account of persecution was implausible. This Court generally will not disturb adverse credibility determinations that are based on "specific examples in the record of inconsistent statements . . . about matters material to [an applicant's] claim of persecution, or on contradictory evidence or inherently improbable testimony regarding such matters." *Zhou Yun Zhang*, 386 F.3d at 74 (internal quotation marks omitted).

## B. Inherently Implausible Testimony

It is well settled that, in assessing the credibility of an asylum applicant's testimony, an IJ is entitled to consider whether the applicant's story is inherently implausible. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 145 (2d Cir. 2006). While we have held that a finding of inherent implausibility must be based on more than "bald speculation or caprice," *Zhou Yun Zhang*, 386 F.3d at 74, we have also recognized that "the line between reasonable inference-drawing and impermissible speculation is necessarily imprecise," *Guo-Le Huang v. Gonzales*, 453 F.3d 142, 147 (2d Cir. 2006); *accord Ming Xia Chen*, 435 F.3d at 145 (acknowledging there is "no way to apply precise calipers to all [implausibility] findings"). Such imprecision is, perhaps, to be expected when testimony is reviewed by an appellate court without the benefit of witness demeanor. *See Zhou Yun Zhang*, 386 F.3d at 73 (observing that a "fact-finder who assesses testimony together with witness demeanor is in the best position to discern" credibility). We are not, however, without any principled guidance in reviewing implausibility findings. In *Ming Xia Chen*, this Court drew a useful analogy to the standard of review set forth in Fed. R. Civ. P. 52(a):

6

> In the somewhat similar context of reviewing bench trial findings of a district judge under the clearly erroneous standard, *see* Fed. R. Civ. P. 52(a), we have been authoritatively instructed to uphold a finding unless we are left with the definite and firm conviction that a mistake has been committed.

435 F.3d at 145 (internal quotation marks omitted). Such a conviction cannot be formed in this case. The IJ's finding is tethered to record evidence, and there is nothing else in the record from which a firm conviction of error could properly be derived. *Cf. Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007) (deferring to the IJ's adverse credibility determination based in part on the "inferential leap" that an arrest warrant submitted in support of an asylum application was inauthentic because of errors on the warrant, the physical state of the warrant and other characteristics of the warrant, and reasoning that such an inference was "tethered to the evidentiary record").

Here, Yan asserts that the IJ failed to provide an adequate explanation for the implausibility finding, impermissibly evaluated Yan's testimony from the IJ's own point of view, and found Yan's entire claim implausible based on actions not directly related to the claim of persecution. We disagree.

First, the IJ's explanation here was more than adequate. The IJ explained in detail which of Yan's actions (and explanations for his actions) caused the IJ to find the testimony as a whole improbable. The IJ was not required to explain in precise detail what made each identified act implausible. *Cf. Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (explaining that this Court requires only "a certain minimum level of analysis from the IJ and BIA opinions denying asylum" in order for judicial review to be meaningful). Moreover, the IJ developed the record such that the reasons for his incredulity are evident. For example, the IJ probed Yan about the

reason why he traveled to Thailand so soon after his wife's purportedly forced abortion. In context, this trip casts doubt on the existence of a forced abortion. There was no reason to think that Yan was simply insensitive to his wife's alleged traumatic ordeal. To the contrary, Yan's testimony about the vacation came after he implied that he had been concerned about his sick and bleeding wife—so concerned, in fact, that he stayed home with her for ten days after the abortion.

Second, this inconsistency refutes any indication that the IJ impermissibly imposed his own mores on Yan's behavior. We read the IJ's isolated comment at the hearing that he would not travel to other countries if his wife were sick in bed as no more than an expression of his incredulity at the story Yan was telling him. Any reasonable person would understand why the IJ here concluded that it is implausible that a man whose wife had just undergone the physical and emotional trauma of a forced abortion would, only days later, travel alone to another country to participate in a vacation with a tour group for no asserted purpose other than pleasure. *See Siewe*, 480 F.3d at 168-69 ("The speculation that inheres in inference is not 'bald' if the inference is made available to the fact-finder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience."). Yan explained that he had paid for the ticket before the abortion, and that the money was not refundable. But just a few days later, Yan took an even more expensive vacation trip to Cuba. This trip took place right after authorities had supposedly imposed a significant fine for the aborted pregnancy and threatened Yan with sterilization. By traveling he necessarily would have subjected himself to detection when leaving and entering Guangzhou Airport.[2] The IJ permissibly relied on this testimony and other record

---

[2] No specific evidence of coordination between Chinese customs and birth control officials was required to allow the IJ to conclude that it was implausible that a person seeking to flee from repression that could result in his sterilization would have repeatedly put himself in

facts to draw the inference that Yan's story was implausible. *Cf. id.* at 167. The fact that there could conceivably be a scenario in which Yan's behaviors would be deemed plausible will not compel this Court to label unreasonable an IJ's finding of implausibility with respect to that alleged course of behavior. It is not this Court's task to "explain away the improbabilities" in petitioner's testimony. *Zhou Yun Zhang*, 386 F.3d at 74.

Finally, the IJ's finding of inherent implausibility does bear a legitimate nexus to the conclusion that Yan's claim of persecution as a whole was not credible. *See Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003) (holding that an IJ's adverse credibility finding must be based on "specific, cogent" reasons that bear a "legitimate nexus" to the credibility of the applicant's claim of persecution). The implausibility of Yan's testimony that he took two expensive vacations while (a) he earned only a modest salary and supported an extended family, (b) his wife lay ill from the traumatic experience of a forced abortion, and (c) Yan himself was wanted by the authorities for evading mandatory sterilization and thus risked identification and capture during those travels, had everything to do with Yan's claim that he was persecuted in the past and that he fears future persecution. The accounts of these vacations, in the context of the record as a whole, raise serious doubts as to whether Yan's wife, and Yan himself, were ever subjected to persecution. We thus defer to the IJ's adverse credibility finding, which constitutes substantial evidence to support denial of relief from removal. *See Zhou Yun Zhang*, 386 F.3d at 79.[3]

---

situations where he encountered legal authorities checking his identity and, possibly, his illegal status.

[3] In finding Yan's testimony incredible, the IJ did identify two discrepancies that might well have been reconciled upon further inquiry: (1) a purported inconsistency between Yan's

9

### III. Conclusion

For the foregoing reasons, the petition for review is denied. Petitioner's pending motion for a stay of removal is dismissed as moot.

---

testimony that he had no problems with his employer regarding family planning policies and an employer letter referencing past criticism on this subject; and (2) a purported discrepancy between a State Department Report and Yan's testimony as to the possibility of individuals from Fujian Province paying a fine in order to have two children. Because we are confident that the IJ would have rejected Yan's testimony as implausible even without these discrepancies, we can confidently conclude that a remand on these points would not yield any different result. *See Cao He Lin,* 428 F.3d at 395.