**QING XIAN LIN, Petitioner,**

v.

**Eric H. HOLDER, Jr., United States Attorney General, Respondent.**[1]

**No. 08–2817–ag.**

United States Court of Appeals, Second Circuit.

April 27, 2009.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric. H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

Feng Li, New York, NY, for Petitioner.

Gregory G. Katsas, Assistant Attorney General; Leslie McKay, Assistant Director; Judith O'Sullivan, Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. WILFRED FEINBERG, Hon. JOSEPH M. McLAUGHLIN and Hon. JOSÉ A. CABRANES, Circuit Judges.

## SUMMARY ORDER

Qing Xian Lin, a native and citizen of China, seeks review of a June 2, 2008 order of the BIA affirming the July 20, 2006 decision of Immigration Judge ("IJ") Sandy K. Hom, which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Qing Xian Lin,* No. A98 357 582 (B.I.A. Jun. 2, 2008), *aff'g* No. A98 357 582 (Immig. Ct. N.Y. City Jul. 20, 2006). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA affirms the IJ's decision in some respects but not others, this Court reviews the IJ's decision as modified by the BIA decision, i.e. minus the arguments for denying relief that were rejected by the BIA. *See Xue Hong Yang v. U.S. Dept' of Justice,* 426 F.3d 520, 522 (2d Cir.2005). Here, the BIA did not appear to adopt the IJ's adverse credibility determination as to Lin's family planning claim. Thus, we assume Lin's credibility on this point. *Id.*

This Court reviews the agency's factual findings under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); *see also Corovic v. Mukasey,* 519 F.3d 90, 95 (2d Cir.2008). We review *de novo* questions of law and the application of law to undisputed fact. *Salimatou Bah v. Mukasey,* 529 F.3d 99, 110 (2d Cir.2008).

## I. Family Planning Claim

As stated above, the BIA accepted Lin's testimony as true for purposes of its analysis of his family planning claim. Nonetheless, it found that Lin failed to demonstrate eligibility for asylum on account of his altercation with family planning officials. The agency properly determined that Lin is not eligible for relief based solely on his wife's alleged forced sterilization. *Shi Liang Lin v. U.S. Dep't of Jus-*

*tice,* 494 F.3d 296, 313 (2d Cir.2007). He may still be eligible for relief, however, if he can show that he suffered persecution, or that he has a well-founded fear of persecution, for resistance that is directly related to his opposition to a coercive family planning policy. *Id.*; 8 U.S.C. § 1101(a)(42). The BIA has explained that acts such as removing an intrauterine contraceptive device ("IUD") or failing to attend mandatory gynecological appointments can constitute "other resistance." *See Matter of M–F–W & L–G–,* 24 I. & N. Dec. 633, 637–38 (BIA 2008). While such acts "arguably [do] not compris[e] active or forceful opposition" to China's family planning policy, they do "thwart the goals" of the policy, and thus can constitute "other resistance." *See id.*

When officials discovered that Lin's girlfriend (now his wife) was pregnant, they told her to get an abortion. Lin did not want her to abort the baby, so he hid her at a relative's house. The officials then captured Lin, telling him that he would not be able to leave until his girlfriend returned for the abortion. Lin tried to go, and a fight ensued. The officials beat and threatened Lin. Lin then called his family, who told him that they were concerned that if he did not cooperate, he would be "punished" at work. Lin's girlfriend later aborted the baby; it is not clear from the record who persuaded her to do so, but the implication appears to be that Lin asked her to submit to the abortion after the beatings and threats.

The IJ never analyzed whether Lin's behavior while he was detained constituted "other resistance." The BIA addressed the issue with only a single conclusory sentence, which stated that Lin "failed to demonstrate" that he had engaged in resistance or that he was persecuted for doing so. Without more explanation, it is difficult for us to evaluate this conclusion. At first glance, it appears to be inconsistent with the statement in *Matter of M–F–W & L–G* that a non-forceful action that "thwarts the goals" of the family planning policy can constitute "other resistance." After all, *Matter of M–F–W & L–G* stated that a refusal to attend a gynecological class could constitute "other resistance"; if that is true, one might think that a prisoner who is beaten for refusing to divulge the whereabouts of his girlfriend would also have engaged in "other resistance." On remand, the BIA should give a more precise explanation for why, on the somewhat unclear facts presented here, Lin did or did not engage in "other resistance." *See Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 192 (2d Cir.2005) (remanding so that BIA could "more precisely explain its rationale").

## II. Religious Persecution Claim

With respect to Lin's religious persecution claim, the BIA agreed with the IJ's adverse credibility determination. However, we cannot find that substantial evidence supported that determination. *See Zheng v. Gonzales,* 440 F.3d 76, 79–80 (2d Cir.2006).

The IJ pointed to the following in support of his adverse credibility determination: (1) Lin failed to provide documentation establishing that he was baptized and otherwise failed to corroborate his claim that he is Christian; (2) Lin's notarial birth document undermined his claim where it included a Spanish translation and was issued before Lin claimed to have decided to come to the United States; and (3) while the State Department profile indicated that underground Christian churches were generally ignored by the authorities, Lin claimed that he was persecuted on account of his membership in an underground church. Each of these findings was flawed.

First, the BIA conceded that the IJ erred in finding that Lin had not provided

corroboration of his baptism. Additionally, Lin provided a letter from his pastor in the United States, stating that Lin often attends Sunday worship and other religious activities at his church, which the IJ failed to consider.[2]

Second, the IJ found that Lin's notarial birth certificate was inconsistent with Lin's statement regarding when he decided to come to the United States because it included a Spanish translation. Although Lin testified that he obtained the document because he wanted to travel, the IJ found that his explanation "lacked coherency" because the countries Lin purportedly wanted to visit were not Spanish-speaking. The IJ further found that while Lin testified that he decided to come to the United States in October 2004, he obtained the certificate in July 2004, months earlier. We review with deference an IJ's finding that particular testimony is implausible. *See Wensheng Yan v. Mukasey*, 509 F.3d 63, 66–67 (2d Cir.2007). But such deference has its limits. Here, the IJ's finding was impermissibly speculative because it was not tethered to anything in the record. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir.2005). The chain of inferences that must be drawn from the Spanish translation to the conclusion that Lin did not leave China based on any fear is too tenuous to support a credibility determination.

Finally, the BIA agreed with the IJ that Lin's statement that he was harassed, arrested, detained, and beaten by Chinese authorities for participating in an underground church was inconsistent with the State Department report, which indicated that small unregistered churches are generally ignored by authorities. However, as Lin points out in his brief to this Court, the State Department report stated that these churches are "generally" ignored but not "always." Indeed, the report states that "[i]n some places, government supervision of religious activity is minimal. However, in other places, security authorities use threats, demolition of unregistered property, interrogation, arrest, imprisonment, and at times severe physical abuse to target unregistered religious leaders and followers." This statement is entirely consistent with Lin's claim. Accordingly, the agency's finding that the report undermined Lin's credibility was in error. Because the IJ's adverse credibility determination was not supported by substantial evidence, we find that remand is required. *See Zheng*, 440 F.3d at 79–80.

For the foregoing reasons, the petition for review is GRANTED, the BIA's order is VACATED, and the case REMANDED for further proceedings consistent with this Order. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(b).

2. Further, the IJ found that Lin's testimony concerning the formality and the ceremony of the baptism and the baptism itself indicated that Lin did not participate in a significant Christian event, as he had testified. In certain circumstances, an adverse credibility finding might reasonably be based on an applicant's lack of doctrinal knowledge—"for instance, where an applicant claims to have been a teacher of, or expert in, the religion in question." *Yose Rizal v. Gonzales*, 442 F.3d 84, 90 (2d Cir.2006). However, such lack of knowledge cannot be held against an applicant who, like Lin, does not claim to be an expert in or have a deep understanding of the religion or practice in question. *Id.*