Khalili v. Garland

BIA
Montante, IJ
A078 477 988

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty-three.

PRESENT:
>JOSÉ A. CABRANES,
RICHARD J. SULLIVAN,
MYRNA PÉREZ,
>>*Circuit Judges.*

_____

BEHZAD KHALILI, a.k.a. BEHZAD JALILI,
>*Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
>*Respondent*.

**19-2219**
NAC

_____

**For Petitioner:** Behzad Khalili, pro se, Buffalo, NY.

**For Respondent:** Jeffrey Bossert Clark, Acting Assistant Attorney General; Anna E. Juarez, Senior Litigation Counsel; Jeffrey R. Meyer, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Behzad Khalili, a native and citizen of Iran, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") ordering removal and denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Behzad Khalili*, No. A 078 477 988 (B.I.A. July 9, 2019), *aff'g* No. A 078 477 988 (Immigr. Ct. Batavia Feb. 11, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We review the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings, including adverse credibility determinations, for substantial evidence, *see Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), and review questions of

2

law de novo, *see Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014); *see also Perriello v. Napolitano*, 579 F.3d 135, 138 (2d Cir. 2009) (reviewing de novo claim that IJ "erred as a matter of law" in denying a motion to terminate).

Khalili advances several arguments as to how the agency erred in denying his claims for relief from removal. We address his arguments in turn.

I.     Removability

We find no error in the agency's denial of Khalili's motion to terminate his removal proceedings. The Department of Homeland Security ("DHS") charged Khalili as deportable under 8 U.S.C. § 1227(a)(1)(A), which states that "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." DHS alleged that Khalili was inadmissible under § 1182(a)(6)(C)(i) because he, "by fraud or willfully misrepresenting a material fact . . . procured[] a visa, other documentation, or admission into the United States." DHS then "ha[d] the burden of establishing by clear and convincing evidence" that Khalili was deportable. 8 U.S.C. § 1229a(c)(3)(A); *see also id.* (explaining that "[n]o decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence"). DHS satisfied this burden with the following evidence.

On February 7, 2000, in Austria, where Khalili was located at the time, an I-590 application for classification as a refugee in the United States was filed under the name "Behzad Jalili"; this application was denied, initially and on a motion to reconsider filed under that name. In November 2000, while living in Germany, Khalili filed an I-590 under the name "Behzad Khalili," which was approved. Accompanying that application, he submitted a Form G-325C, in which he provided certain biographic information but left blank a box requiring him to list all other names that he had used. Khalili also submitted a photograph with his application, which the agency later determined was strikingly similar to the photograph submitted in connection with the February 2000 application.

In 2002, while in the United States, Khalili filed a Form I-485 application to adjust to lawful permanent resident ("LPR") status, which was granted. On that form, he replied "no" to a question asking if he had obtained his status through fraud or misrepresentation. After obtaining LPR status, Khalili petitioned to change his name to "Jalili" in conjunction with his application for naturalization, which was denied in 2017. Khalili admitted that Jalili was his birth name and testified that he had destroyed a passport in that name before applying for refugee status in Germany.

Notably, there were a number of biographical details in common between the February 2000 application that Khalili denies filing and the applications that he admits to filing. The written statements accompanying the February 2000 I-590, the November 2000 I-590, and Khalili's 2018 application for asylum all indicate that he was born in Ahwaz, Iran in November 1971. While the February 2000 I-590 provided that he left Iran in 1999, a motion to reconsider the denial of the application clarified that he left Iran in May 1998, which is consistent with his November 2000 application. In addition, the motion to reconsider the denial of the February 2000 application indicated that he went to the World Cup in France in 1998, and then went to Germany and Austria; he testified to these same details at his hearing before the IJ and indicated that he lived in Germany and Austria in his asylum application.

As an initial matter, we reject Khalili's argument that the agency improperly admitted the February 2000 I-590 application into evidence. The Federal Rules of Evidence do not apply to removal proceedings. *See Zhen Nan Lin v. U.S. Dep't of Justice*, 459 F.3d 255, 268 (2d Cir. 2006). Rather, "[e]vidence is admissible provided that it does not violate the alien's right to due process of law," meaning that the evidence is "probative and its use is fundamentally fair." *Id.* (internal

quotation marks omitted). Khalili has not established that the admission of the February 2000 I-590 violated his right to due process. There is nothing in the record to suggest that the February 2000 I-590 is not what it purports to be: an application for classification as a refugee filed by a person named "Bezhad Jalili." And, indeed, in the course of his proceeding before the IJ, Khalili had the opportunity to argue that he was not the individual who submitted that application. There can be little doubt that the record supports the agency's conclusion that Khalili was the one who filed it – he was living in Austria when it was filed, it was filed under his birth name, he admitted to later destroying his passport in that name, his photograph was attached to the application, and the application contained facts consistent with his later applications.

In arguing that the February 2000 I-590 application was unreliable evidence, Khalili asserts that the translated Iranian identification document attached to this application included a stamped submission date of 2007, seven years after the I-590 was filed. Although DHS offered no explanation for the 2007 date stamp and the agency did not specifically address this issue, the BIA generally concluded that DHS's submissions were "reliable and probative, were records made by public officials in the ordinary course of their duties, and were directly relevant to the

6

issue of [Khalili's] removability." Certified Admin. Record at 5. The BIA further concluded that the admission of these submissions was "fundamentally fair" because Khalili had "an opportunity to contest their validity." *Id.* at 5–6. Given the wealth of evidence in the record indicating that Khalili filed the February 2000 I-590 – including the noted similarity of the photographs submitted with each I-590, the similar biographical details in the applications, Khalili's presence in Austria at the time the February application was filed, and his admission that he destroyed a passport in the name listed on the February application – we cannot conclude that the 2007 date stamp rendered the February 2000 I-590 inadmissible.

The remainder of Khalili's arguments are unavailing because he attacks evidence the agency did not rely on to find that DHS established his removability. *See, e.g., id.* at 6 (acknowledging Khalili's "specific objections to certain inaccuracies on the Form I-213," but noting that DHS had established removability even without this form).

## II. Asylum – Time Bar Ruling

Under 8 U.S.C. § 1158(a)(2)(B), an alien is ineligible for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." Our

jurisdiction to review findings regarding the timeliness of an asylum application is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). It is undisputed that Khalili filed his asylum application in 2018, eight years after he entered the United States following a trip to Iran. An applicant may establish an exception to the time bar where, among other things, he "maintained . . . lawful immigrant or nonimmigrant status . . . until a reasonable period before the filing of the asylum application." 8 C.F.R. § 1208.4(a)(5)(iv). The IJ concluded that Khalili did not qualify for this exception because he obtained his LPR status by fraud or misrepresentation. As discussed above, the record evidence amply supports this conclusion, as well as the IJ's determination that Khalili's testimony to the contrary was implausible. *See Hong Fei Gao*, 891 F.3d at 76. As such, we cannot conclude that the agency erred in its determination that Khalili's asylum claim was time-barred.

III.    Withholding of Removal and CAT Relief – Credibility

The record also supports the agency's conclusion that Khalili's testimony about his prior refugee status applications was implausible. An IJ "may base a credibility determination on . . . the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written

8

and oral statements . . ., the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *see also Hong Fei Gao*, 891 F.3d at 76.

The agency reasonably concluded that Khalili's claim that he did not file the February 2000 I-590 application was implausible. We will not disturb an IJ's implausibility finding so long as it "is tethered to record evidence, and there is nothing else in the record from which a firm conviction of error could properly be derived." *Wensheng Yan v. Mukasey*, 509 F.3d 63, 67 (2d Cir. 2007). Here, the IJ's implausibility finding was tethered to the record: the name listed on the application was "Behzad Jalili," which Khalili admitted was his birth name and the name on the passport he destroyed before applying for refugee status in Germany; Khalili did not have a cogent explanation for why he destroyed that passport; he conceded that he was in Austria when the first I-590 application was submitted; the motion to reconsider the denial of the February I-590 application

contained facts consistent with Khalili's later testimony – for example, that he went to France in 1998 for the World Cup; and his photograph was attached to both applications.

The IJ also reasonably relied on issues apart from the refugee applications to conclude that Khalili was not credible. For instance, Khalili testified that he traveled to Iran twice after obtaining LPR status, which the IJ determined undercut his alleged fear of persecution. Although voluntary "return trips alone are insufficient to establish [a] lack of credibility," such trips "may be relevant to credibility in the exercise of an IJ's informed discretion." *Kone v. Holder*, 596 F.3d 141, 150 (2d Cir. 2010). In addition, the IJ specifically found that Khalili's asylum application did not mention certain alleged threats that had been made against him during a trip to Iran. While Khalili testified that Iranian officials withheld his passport until he signed a pledge that he would not return to the United States, the IJ noted that Khalili did not include any information regarding this incident in his application and concluded that the omission of these facts from Khalili's application undermined his credibility. *See Hong Fei Gao*, 891 F.3d at 79 (explaining that the omission of facts may be probative when the omitted facts are those "that a credible petitioner would reasonably have been expected to disclose

under the relevant circumstances"). There was therefore substantial evidence to find that Khalili was not credible.

## IV. Due Process Challenges

We also reject Khalili's contention that the agency denied him due process of law. Khalili advances two arguments in this regard, both of which are unavailing. *First*, Khalili argues that the IJ improperly refused to allow him to present his witnesses when he had run through the allotted time for his hearing. *Second*, Khalili argues that the IJ failed to adequately consider his claim that he would be subject to future persecution if he were to return to Iran.

As to Khalili's first due process argument, we cannot conclude that the IJ erred in refusing to allow him to present oral witness testimony after he had exhausted his allotted hearing time. Although the IJ did not allow Khalili's witnesses to testify, the IJ confirmed on the record that he reviewed written statements from those witnesses before rendering his decision. Khalili – who specifically requested that the IJ accept those witness statements in lieu of testimony – thereafter rested his case without objection. Furthermore, as the BIA recognized, the statements themselves concerned Khalili's practice of Christianity, an issue that was uncontroversial in the IJ's analysis. The statements did not

suggest that the witnesses had any knowledge regarding Khalili's experiences in Iran or how Khalili would be treated were he to return. Accordingly, we cannot say that the inability to put on live witness testimony compromised Khalili's right to "a full and fair opportunity to present [his] claims or . . . otherwise deprived [him] of fundamental fairness." *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (internal quotation marks omitted).

As to Khalili's second due process argument, it is true that "an applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible." *Paul v. Gonzales*, 444 F.3d 148, 154 (2d Cir. 2006) (emphasis omitted). Nevertheless, in circumstances in which an applicant's fear of future persecution is unrelated to past persecution, "the applicant bears the burden of establishing that the fear is well-founded." 8 C.F.R. § 1208.13(b)(1).

On this point, we again cannot conclude that there was a violation of Khalili's due process rights. The IJ's decision specifically discussed several facts that undercut Khalili's claim that he feared future prosecution – for example, that he had returned to Iran twice since he received LPR status, that he had omitted

certain relevant details regarding his purported experiences in Iran from his asylum application, that he had received no threats since his return to the United States, and that his family members remained in Iran without issue. And while Khalili claims that the agency overlooked country condition evidence demonstrating "a pattern-and-practice of mistreatment of Iranians who [are] converted Christians," Khalili Br. at 26, the BIA specifically concluded that the record did not support "a separate religious pattern-or-practice claim," Certified Admin. Record at 6. As such, Khalili's contention that the agency committed a due process violation by "overlooking" or "mischaracterizing" his religious persecution claim, Khalili Br. at 26, is meritless.

*    *    *

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

13