22-6194-ag
Chen v. Garland

BIA
Thompson, IJ
A095 160 434

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24ᵗʰ day of April, two thousand twenty-four.

PRESENT:
> **MICHAEL H. PARK,**
> **EUNICE C. LEE,**
> **SARAH A. L. MERRIAM,**
> *Circuit Judges.*

_____

**YONG ZHONG CHEN,**
> *Petitioner*,

> v.                                                                     **22-6194-ag**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

_____

| | |
|---|---|
| **FOR PETITIONER:** | Mike P. Gao, Law Offices of Mike P. Gao, P.C., Flushing, NY. |
| **FOR RESPONDENT:** | Brian Boynton, Principal Deputy Assistant Attorney General; Brianne Whelan Cohen, Senior Litigation Counsel; Christina R. Zeidan, Trial |

Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Yong Zhong Chen, a native and citizen of the People's Republic of China, seeks review of an April 1, 2022, decision of the BIA affirming a May 6, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and finding that he had filed a frivolous asylum application. *See In re Yong Zhong Chen,* No. A 095 160 434 (B.I.A. Apr. 1, 2022), *aff'g* No. A 095 160 434 (Immigr. Ct. N.Y.C. May 6, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual findings, including adverse credibility determinations, for substantial evidence, and we review questions of law and the application of law to the facts *de novo*. *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.   Credibility

Substantial evidence supports the IJ's adverse credibility determination. "Considering the totality of the circumstances, and all relevant factors, a trier of fact may

base a credibility determination on . . . the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008) (per curiam); *accord Hong Fei Gao*, 891 F.3d at 76.

First, the agency reasonably relied on Chen's inconsistent statements regarding why he failed to appear at a 2003 hearing. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). In the affidavit he submitted in connection with his first (2010) motion to reopen, Chen affirmed (1) that he was advised not to go to the 2003 hearing because his case had problems and he could be detained if he appeared, and (2) that he chose not to appear because this advice frightened him. *See* Certified Admin. Rec. ("CAR") at 760. In the affidavit he filed in connection with his third (2013) motion to reopen, which was granted, Chen similarly stated that he was intimidated with warnings of dire consequences if he appeared, and he did not mention lacking notice of the hearing. *See id.* at 455. But at his 2019 hearing, Chen testified that he had intended to attend his 2003 hearing despite the warning, and that he had not appeared only because he did not receive notice after he moved to a new address.

3

Chen argues that he told the attorney who prepared the affidavit in support of his 2010 motion to reopen that he lacked notice of his 2003 hearing, and then signed the affidavit without knowing its contents. In support of that account, Chen emphasizes that the affidavit is not accompanied by a certificate of interpretation or translation. The agency was not required to accept that explanation because Chen swore to the truth of the affidavit before a notary. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2018) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (citation and quotation marks omitted)). Moreover, Chen conceded that he *had* reviewed the 2013 affidavit, which was prepared by a different attorney but contained a similar account. He was not responsive when asked, at the 2019 hearing, why this second affidavit did not mention that he lacked notice of the 2003 hearing. Given these circumstances, the IJ reasonably concluded that it was not plausible that an attorney had invented facts in the 2010 affidavit without Chen's knowledge. *See Wensheng Yan v. Mukasey*, 509 F.3d 63, 67 (2d Cir. 2007) (per curiam) (upholding implausibility finding that was "tethered to record evidence").

Second, the agency reasonably relied on Chen's inconsistent statements regarding whether he was responsible for the documents submitted in support of his original application and whether those documents were authentic. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Chen stated in his affidavit in support of the 2010 motion to reopen that a former representative had presented fraudulent evidence in his case, and that he did

4

not personally present that evidence. But he testified at his 2019 hearing that the disputed evidence was authentic and that he had obtained the evidence from China and given it to his attorney to submit on his behalf. As discussed above, the agency was not required to accept Chen's claim that he was not responsible for the contents of the 2010 affidavit that he had signed.

In addition to challenging the agency's reliance on his affidavit, Chen argues that the agency failed to consider either that he was the victim of his first representative's immigration services scam or that he may have misremembered the events surrounding his 2003 hearing given the time that had elapsed. But Chen's first representative is not the person responsible for the affidavits at issue here, and Chen did not argue before the agency that he had difficulty remembering whether he was notified of the 2003 hearing.[1] *See Ud Din v. Garland*, 72 F.4th 411, 419, 420 n.2 (2d Cir. 2023) (explaining that issue exhaustion is "mandatory").

The above inconsistencies provide substantial evidence supporting the adverse credibility determination. *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an [applicant] from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."); *Xiu Xia Lin*, 534 F.3d at 167.

---

[1] Chen does not challenge the BIA's additional reasoning related to the shifting grounds for his asylum claim, and we therefore decline to reach this abandoned issue. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (finding claim abandoned when it was not raised in petitioner's brief).

"Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief." *Hong Fei Gao*, 891 F.3d at 76. That is the case here. Contrary to Chen's argument, the agency found that, absent credible testimony, Chen failed to satisfy his burden for any form of relief; it did not find that his claims for withholding of removal and CAT relief were foreclosed by its finding that Chen had filed a frivolous asylum application.

Chen also argues that his testimony in conjunction with country conditions evidence satisfied his burden to show a likelihood of future persecution and torture because there is evidence of widespread abuses of political dissidents in Chinese prisons. But Chen was found not credible, and the country conditions evidence did not independently satisfy his burden, absent credible evidence that he, specifically, would be targeted. *See Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (requiring "particularized evidence" beyond general country conditions to support a CAT claim).

## II.  Finding of Frivolous Application

"If the Attorney General determines that an [applicant] has knowingly made a frivolous application for asylum . . . , the [applicant] shall be permanently ineligible for any benefits under this chapter[.]" 8 U.S.C. § 1158(d)(6). An application is frivolous if "[a]ny of the material elements . . . is deliberately fabricated." 8 C.F.R. § 1208.20(a)(1). The Government has the burden to demonstrate that a filing is frivolous. *See Matter of B-Y-*, 25 I. & N. Dec. 236, 240 (B.I.A. 2010). The BIA has set forth four

6

procedural safeguards that an IJ must follow in this context:

> (1) notice to the [applicant] of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the [applicant] knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the [applicant] has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

*Biao Yang v. Gonzales*, 496 F.3d 268, 275 (2d Cir. 2007) (per curiam) (quoting *Matter of Y-L-*, 24 I. & N. Dec. 151, 155 (B.I.A. 2007)); *see also* 8 U.S.C. § 1158(d)(4)(A) (requiring notice of consequences of filing frivolous application).

Chen does not dispute that the IJ satisfied the first, second, and fourth requirements. Chen argues only that there is insufficient evidence that documents submitted in support of his original asylum application were fabricated or that he knew them to be fabricated, and that the agency gave insufficient weight to evidence that these documents were authentic. These arguments are unavailing.

There is sufficient evidence in the record to support the IJ's finding that Chen submitted two fabricated documents: a detention warrant supporting Chen's claim that he was arrested and detained for his role in a Taoist organization in China; and a business license attached to a letter from a Chinese law firm opining that the detention warrant was authentic. Chen conceded in the affidavit in support of his 2010 motion to reopen that his original asylum application included fraudulent documents. Then, at his 2019 hearing, he testified that he was responsible for obtaining the documents in question and had reviewed them before they were submitted. The agency was not required to credit Chen's

7

conflicting testimony that the affidavit was inaccurate, and the documents were valid. *See Majidi*, 430 F.3d at 80. Having concluded that the business license was fabricated, the agency reasonably inferred that the letter from the law firm, which cited the license to establish the declarant's credentials, was also fabricated, and thus reasonably declined to give credence to the opinion in the letter that the detention warrant was authentic.[2]

Further, the agency reasonably relied on the conclusions of two Reports of Investigation from the legacy Immigration and Naturalization Service to conclude that Chen submitted fabricated documents. The first report, prepared by a Foreign Service National Investigator, concluded that the detention warrant was fraudulent because it cited a nonexistent regulation and failed to cite the relevant law. The second, prepared by the same investigator, concluded that the business license was fabricated because the licensing entity named did not issue business licenses. We have held that the following factors provide useful guidance for assessing the reliability of such reports: "(i) the identity and qualifications of the investigator(s); (ii) the objective and extent of the investigation; and (iii) the methods used to verify the information discovered." *Zhen Nan Lin v. U.S. Dep't of Just.*, 459 F.3d 255, 271 (2d Cir. 2006). Here, while the reports do not identify the

---

[2] Chen also submitted photographs purportedly depicting his parents in front of the offices of the law firm. He did not submit translations of the signs depicted, and the photographs do not purport to establish that the law firm is registered as asserted in the business license attached to its letter. Moreover, the IJ reasonably assigned diminished weight to the photographs because they were created by interested parties unavailable for cross-examination. *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence."); *see also Likai Gao*, 968 F.3d at 149 (deferring to IJ's decision to accord "little weight" to letters from declarants who were "interested parties" and not available for cross-examination).

qualifications of the investigator, or explicitly state the method used to verify the information discovered, they state the purpose and scope of the investigation and identify the basis for the conclusions.

As the BIA acknowledged, Chen's inability to cross-examine the investigator diminishes the weight that can be assigned to the reports, but due process does not demand that the agency provide an opportunity for cross-examination before relying on reports created "in the ordinary course of [an investigator's] duties." *Felzcerek v. INS*, 75 F.3d 112, 116 (2d Cir. 1996).

As to Chen's knowledge that the documents were fabricated, he insisted at his 2019 hearing that he obtained and reviewed the documents in question and had reviewed them before they were submitted. The agency reasonably inferred from this that he was aware they were fabricated: rather than defend them at a hearing after they were called into question, he failed to appear and took no further steps to pursue his claim until seven years later, when he filed a motion to reopen that conceded that fraudulent documents were submitted, but blamed their submission on someone else.

Chen also argues that the agency improperly placed the burden on him to show that his application was *not* frivolous. However, the agency explicitly acknowledged that the Government had the burden of demonstrating that the initial application was frivolous. The agency's analysis began with its finding that there was persuasive evidence that Chen's documents were fabricated; its subsequent discussion of the absence of persuasive evidence to the contrary does not suggest that it improperly shifted the burden to Chen to

9

demonstrate that his application was not frivolous.

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court