**Sk Shahriair MAJIDI, Petitioner,**

**v.**

**Alberto GONZALES,\* Attorney General of the United States, Respondent.**

**Docket No. 03–4241.**

United States Court of Appeals,
Second Circuit.

Argued: June 14, 2005.

Decided: Nov. 15, 2005.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have substituted Attorney General Alberto Gonzales for former Attorney General John Ashcroft as the respondent in this case.

Alan Michael Strauss, Rodriguez & Plotnik, New York, NY for Petitioner.

Beverly M. Russell, Assistant United States Attorney (Kenneth L. Wainstein, United States Attorney for the District of Columbia, Madelyn E. Johnson, Assistant United States Attorney, on the brief), United States Attorney's Office for the District of Columbia, Washington, DC for Respondent.

Before: CABRANES and RAGGI, Circuit Judges, and SAND,** District Judge.

JOSÉ A. CABRANES, Circuit Judge.

Petitioner Majidi, a native and citizen of Bangladesh, petitions this Court for review of a January 10, 2003 order of the Board of Immigration Appeals ("BIA") affirming a November 27, 2001 decision by an immigration judge ("IJ") that denied petitioner's application for asylum and withholding of removal. The IJ found petitioner's account of the persecution he allegedly suffered in Bangladesh not credible. Underscoring the deference we must accord to

** The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

such credibility findings, we deny the petition for review.

## BACKGROUND

We assume that the parties are familiar with the facts, the procedural history, and the scope of the issues presented on appeal.

Petitioner's asylum claim rests on the persecution he allegedly suffered in Bangladesh as a member of the Jatiya Party, and we set forth some of the details of that persecution here. Petitioner asserts that he joined the party in 1986 and was elected general secretary of the party's local branch in 1989. At the time petitioner joined it and until 1990, the Jatiya Party governed the country. The crux of petitioner's asylum claim is that members of the Bangladesh Nationalist Party ("BNP") persecuted him on several occasions after the BNP gained control of the government in 1991. Specifically, petitioner was arrested in 1991 and again in 1992. Although he was allegedly placed under police surveillance, petitioner continued to organize meetings of Jatiya Party members in private homes. He testified that, in 1993, the police "came to my home and abused me and threatened me that I would not be able to hold such meetings even indoors." In 1994, however, BNP members allegedly broke up another meeting at petitioner's home. A confrontation ensued, and petitioner, having suffered an injury, escaped the scene. Not until the following day did petitioner learn that his brother—who apparently arrived at petitioner's home after petitioner had fled from it—had been fatally stabbed there by BNP members. Fearing for his own life, petitioner then decided to leave Bangladesh.

The IJ found petitioner not credible, relying on several findings: (1) the "dramatically different" accounts of the 1993 incident in the supplement to petitioner's asylum application and in petitioner's testimony; (2) the inconsistencies in the timing of the events surrounding the death of petitioner's brother; (3) the lack of evidence to corroborate the brother's death; (4) the inconsistencies in petitioner's accounts of his departure from Bangladesh and of his arrival to the United States; (5) the inconsistencies between petitioner's testimony and the Department of State report regarding conditions in Bangladesh; and (6) petitioner's "extremely unresponsive and evasive" demeanor at his asylum hearing. In affirming the IJ's decision, the BIA concluded that the first of the grounds supporting the IJ's adverse credibility finding was, standing alone, "material and dispositive."

Petitioner now challenges the BIA's affirmance of the IJ's adverse credibility finding.

## DISCUSSION

■ Where, as here, the BIA affirmed the IJ's decision to deny asylum by brief order, we review the IJ's decision rather than the BIA's order. *See Yu Sheng Zhang v. DOJ,* 362 F.3d 155, 158–59 (2d Cir.2004).

■ It cannot be overstated that our review of the IJ's credibility findings is highly deferential, *see Zhou Yun Zhang v. INS,* 386 F.3d 66, 73–74 (2d Cir.2004), and the IJ's "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); *see also Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003). "Where the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements by the asylum applicant about matters material to his claim of persecution, or on contradictory evidence or inher-

ently improbable testimony regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang*, 386 F.3d at 74 (citations and internal quotation marks omitted). We require, however, that the IJ's reasons for an adverse credibility finding be "specific" and "cogent," *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted), and that a " 'legitimate nexus' " exist between these reasons and "petitioner's claim of persecution," *Xu Duan Dong v. Ashcroft*, 406 F.3d 110, 112 (2d Cir.2005) (quoting *Secaida–Rosales*, 331 F.3d at 307). In sum, the "exceedingly narrow" scope of our review, *Carranza–Hernandez v. INS*, 12 F.3d 4, 7 (2d Cir.1993), is designed to ensure merely that "credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice," *Zhou Yun Zhang*, 386 F.3d at 74. Our role does not extend to "hypothesiz[ing] excuses for the inconsistencies" in an asylum applicant's testimony. *Id.*

■ In this case, we conclude that the first discrepancy identified by the IJ—petitioner's "dramatically different" accounts of the 1993 incident—offers substantial evidence in support of the IJ's adverse credibility finding. On March 4, 1999, petitioner submitted a "supplemental statement" in support of his asylum application, recounting four incidents of persecution that he suffered "due to ... membership in" the Jatiya Party. Only a single incident occurred in 1993, and petitioner described the event as follows: "[M]embers of the BNP came to my home and ransacked my house in front of my family. They insulted my family and asked for the whereabouts of my uncle and me." This depiction differs substantially from the account offered in petition-

er's direct testimony at his September 8, 2000 asylum hearing. When his counsel inquired about the details of the 1993 incident, petitioner stated: "In '93, last time [BNP members] came to my home and abused me and threatened me that I would not be able to hold [party] meetings even indoors." Petitioner's testimony at the hearing made no reference to any other incidents of persecution that occurred in 1993. Accordingly, the IJ concluded that petitioner's accounts of the 1993 incident are inconsistent: while petitioner's "supplemental statement" asserted that BNP members "ransacked" petitioner's home in his absence, petitioner's asylum hearing testimony indicated that he was personally "abused" and "threatened" by the BNP.

■ On appeal, petitioner challenges the IJ's finding that these two accounts were inconsistent, principally on the ground that petitioner was describing two *separate* occurrences. He argues that "it is not reasonable for the IJ to have concluded that Mr. Majidi was discussing only one incident without first having asked him if the incidents were the same and, if they were, without having given Mr. Majidi an opportunity to provide an explanation."

Petitioner's argument misapprehends the degree of deference we must afford to the IJ's credibility findings. A petitioner "must do more than offer a 'plausible' explanation for his inconsistent statements to secure relief; 'he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony.' " *Zhou Yun Zhang*, 386 F.3d at 76 (quoting *Wu Biao Chen*, 344 F.3d at 275) (emphasis added). Petitioner has not done so here. To be sure, petitioner's explanation for the inconsistencies in his accounts—that these accounts were. intended to relate separate incidents—is not implausible. Were we charged with the task of "justify[ing] the

contradictions," *id.* at 74, in asylum applicants' submissions, we may have chosen to adopt petitioner's explanation.

But this is emphatically not our role. A court reviewing the determinations of an administrative agency for "substantial evidence" must defer to the factfinder's findings based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). In reviewing the BIA's denials of asylum applications, we consistently defer to an IJ's findings with respect to material inconsistencies in an applicant's account where those findings are supported by "specific" and "cogent" reasons, which also bear a "legitimate nexus" to the adverse credibility finding. *Secaida–Rosales,* 331 F.3d at 307. These requirements were satisfied here, since the IJ identified a material inconsistency in an aspect of petitioner's story that served as an example of the very persecution from which he sought asylum. Nothing in the record of this case would have clearly alerted a reasonable factfinder—much less "compelled" a reasonable factfinder to conclude, *Wu Biao Chen,* 344 F.3d at 275— that petitioner's accounts of the 1993 incident in his "supplemental statement" and his oral testimony were in fact intended to depict different occurrences.

■ Nor have we ever required that an IJ, when faced with inconsistent testimony of an asylum applicant, must always bring any apparent inconsistencies to the applicant's attention and actively solicit an explanation. We hold that an IJ may rely on an inconsistency in an asylum applicant's account to find that applicant not credible—provided the inconsistency affords "substantial evidence" in support of the adverse credibility finding—without soliciting from the applicant an explanation for the inconsistency. Accordingly, the IJ's failure to inquire how petitioner could reconcile his "dramatically different" accounts of the same 1993 event does not render insubstantial the evidence supporting the IJ's adverse credibility finding in this case.

■ We therefore conclude that the IJ's findings with respect to petitioner's inconsistent descriptions of the 1993 incident provide substantial evidence to support an adverse credibility finding in this case. To satisfy the requirements of "substantial evidence," it is enough that a part of an asylum applicant's account be found not credible, provided that this part bears a "legitimate nexus" to the applicant's claim of persecution. Consequently, we need not rely on the IJ's other findings in reaching our conclusion.[1]

An applicant who, like petitioner, fails to establish his eligibility for asylum is necessarily unable to establish his eligibility for

---

1. We note, however, that our conclusion here is reinforced by the IJ's finding that petitioner acted in an "extremely unresponsive and evasive" manner and that petitioner's responses to questions "were often unclear and incomplete." As we have previously held, "the IJ has the unique advantage" in making credibility findings "of having heard directly from the applicant." *Zhou Yun Zhang,* 386 F.3d at 73. We have accorded particular weight to this advantage because

> [a] fact-finder who assesses testimony together with witness demeanor is in the best position to discern, often at a glance,

whether a question that may appear poorly worded on a printed page was, in fact, confusing or well understood by those who heard it; whether a witness who hesitated in a response was nevertheless attempting truthfully to recount what he recalled of key events or struggling to remember the lines of a carefully crafted 'script'; and whether inconsistent responses are the product of innocent error or intentional falsehood.

*Id.* Although we need not rely on the IJ's assessment of petitioner's demeanor here, we underscore the general significance of such assessments to credibility findings.

withholding of removal. *See Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999).

We have considered all of petitioner's arguments and found each of them to be without merit. Accordingly, the petition for review is denied.