11-25-ag
Zhang v. Holder

BIA
Abrams, IJ
A088 349 364

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of January, two thousand twelve.

PRESENT:
> PIERRE N. LEVAL,
> JOSÉ A. CABRANES,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges.*

_____

MAOHUA ZHANG,
> *Petitioner,*

> v.                                    11-25-ag
>                                       NAC

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:        Lee Ratner, New York, New York.

FOR RESPONDENT:        Tony West, Assistant Attorney
                       General; Thomas B. Fatouros, Senior
                       Litigation Counsel; Robert Michael
                       Stalzer, Trial Attorney, Office of
                       Immigration Litigation, Washington
                       D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Maohua Zhang, a native and citizen of China, seeks review of the December 22, 2010, decision of the BIA affirming the October 20, 2008, decision of Immigration Judge ("IJ") Steven R. Abrams denying his application for asylum, withholding of removal, and CAT relief. *In re Maohua Zhang*, No. A088 349 364 (B.I.A. Dec. 22, 2010), *aff'g* No. A088 349 364 (Immig. Ct. N.Y. City Oct. 20, 2008). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed both the BIA's and IJ's opinions. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *see also Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008) (per curiam). We "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. For asylum applications, like

2

Zhang's, governed by the REAL ID Act, the agency may, considering the totality of the circumstances, base a credibility finding on an asylum applicant's demeanor, the plausibility of his account, and inconsistencies in his statements, without regard to whether they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 163-64.

Substantial evidence supports the agency's determination that Zhang did not testify credibly regarding his claim that he faced persecution on account of his violation of China's family planning policy and his involvement with Falun Gong. In finding Zhang not credible, the agency reasonably relied on inconsistencies in the record. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Xiu Xia Lin*, 534 F.3d at 163-64, 166-67. As the agency noted, at the merits hearing, Zhang provided inconsistent testimony as to the date when he was arrested in connection with his ex-wife's second pregnancy. When first asked about the family planning violation, Zhang testified that Chinese officials came to his home on November 5, 1994, arrested him, and took him to the "Family Clinic" where he was detained for 11 days. Later, when asked what had happened on November 11, 1994, Zhang responded, "That was when I was

3

arrested by them inside." When asked to clarify, Zhang stated that he "misspoke" and that he was detained for 11 days. Thus, Zhang's assertion in his brief that he "never stated that he was arrested on November 11, 1994 during his testimony and always stated that he was arrested on November 5, 1994," is refuted by the hearing transcript.

Second, in assessing Zhang's credibility, the agency reasonably relied on inconsistencies between the statements he made during his credible fear interview and the testimony he provided at the merits hearing. In its decision, the BIA determined that the IJ's reliance on the credible fear interview was warranted because the record of that interview bore "the indicia of reliability." While "adverse credibility determinations based on 'discrepancies' with a credible fear interview should be examined with care to ensure that they are not arbitrary," where the credible fear interview bears the "hallmarks of reliability," it may appropriately be considered in assessing an alien's credibility. *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009); *see also Ramsameachire v. Ashcroft*, 357 F.3d 169, 180-81 (2d Cir. 2004). Here, the BIA correctly determined that Zhang's credible fear interview bore sufficient indicia of reliability. First, the interview was

memorialized in a typed document setting forth the questions asked and Zhang's responses, and this document was included as an exhibit in the removal proceedings. *See Ming Zhang*, 585 F.3d at 725; *Ramsameachire*, 357 F.3d at 180 ("verbatim account or transcript" of the interview more reliable than a summary). The record also reflects that the interview was conducted with the aid of a Mandarin translator, and Zhang's responses demonstrated his understanding of the questions presented during the interview. *See Ming Zhang*, 585 F.3d at 725. Further, the asylum officer indicated on his report that, before the interview began, he explained to Zhang "the purpose of the interview, the importance of providing full and accurate testimony, and the fact that [Zhang] could ask for clarification at any point during the proceedings." *Ming Zhang*, 585 F.3d at 725. Finally, Zhang was asked questions that were "clearly designed to elicit a potential basis for an asylum claim," *Ramsameachire*, 357 F.3d at 181, such as whether he believed that anyone in China wanted to harm him on account of his religion or political opinion, whether he had previously been harmed in China, and whether he was afraid that he would be harmed if returned to China. *See Ming Zhang*, 585 F.3d at 725.

Given the reliability of these aspects of the credible

5

fear interview, the agency reasonably relied on the discrepancies between Zhang's statements at that interview and his testimony at the merits hearing in assessing his credibility. For example, during his credible fear interview, Zhang stated that he had sold Falun Gong books "to make a living," and continued to sell the books after he was arrested for doing so because "the money was good," and detailed the amounts he charged for the books. At the merits hearing, however, Zhang testified that he began to "pass out" Falun Gong books after he became reacquainted with an old friend who had started practicing Falun Gong and was impressed with the changes in his friend's temperament. Zhang further testified that he did not receive payment for passing out the books, but was told that, if he were arrested, he should tell the police that he was selling the books for profit. When asked why he began passing out the books, Zhang responded that it was because he "ha[d] . . . faith in Falun Gong, I saw them after my friend practiced[,] his health got a lot better."

In his brief, Zhang argues that because "the motivations of an asylum seeker are irrelevant to whether or not relief should be granted," it is not an inconsistency within the meaning of the REAL ID Act for an asylum seeker

6

to "state different and contradictory motivations for his actions." The case he cites for this proposition, *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554 (2d Cir. 2006), does not support this conclusion. In *Tun*, we stated that "there is no requirement that the political activities that give rise to a risk of persecution be motivated by actual political beliefs." *Kyaw Zwar Tun*, 445 F.3d at 570-71. Thus, while *Tun* stands for the proposition that a petitioner's political beliefs do not have to be genuine to give rise to a risk of persecution, it does not support a conclusion that an alien's proffered contradictory motivations may not be taken into account in assessing his overall credibility, especially under the REAL ID Act when an adverse credibility determination is made upon the totality of the circumstances. *See Xiu Xia Lin*, 534 F.3d at 163-64.

Finally, Zhang has not challenged the IJ's finding that he was not credible based in part on his demeanor, and we give particular deference to that assessment. *See Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005).

Thus, given the inconsistencies and demeanor finding, the adverse credibility determination is supported by substantial evidence, and we find no error in the agency's denial of Zhang's application for asylum, withholding of

7

removal, and CAT relief on credibility grounds as those claims were all based on his alleged violation of China's family planning policy and his purported involvement with Falun Gong. *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8