Kumar v. Lynch

BIA
Mulligan, IJ
A200 819 218

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of April, two thousand sixteen.

PRESENT:
DENNIS JACOBS,
PETER W. HALL,
DENNY CHIN,
*Circuit Judges.*

_____

SOREV KUMAR,
*Petitioner,*

v.                                                          15-799
                                                            NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:        Garish Sarin, Los Angeles, CA.

FOR RESPONDENT:        Benjamin C. Mizer, Principal Deputy
                       Assistant Attorney General; Holly
                       M. Smith, Senior Litigation Counsel;
                       Jane T. Schaffner, Trial Attorney,

Office of Immigration Litigation,
United States Department of Justice,
Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Sorev Kumar, a native and citizen of India, seeks review of a February 27, 2015, decision of the BIA affirming a March 12, 2013, decision of an Immigration Judge ("IJ") denying Kumar's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sorev Kumar,* No. A200 819 218 (B.I.A. Feb. 27, 2015), *aff'g* No. A200 819 218 (Immig. Ct. N.Y. City Mar. 12, 2013). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have considered both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review

2

are well established.  *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, "without regard to whether" those inconsistencies go "to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008).  Under the "substantial evidence" standard of review, "we defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Xiu Xia Lin*, 534 F.3d at 167.

Here, the adverse credibility determination is sound. Kumar's testimony was inconsistent with respect to when and why he obtained his passport.  He testified that he applied for a passport because he feared for his life after being beaten by Congress Party members in April 2006.  When the Government

3

noted that Kumar's passport was issued in February 2006, Kumar explained that he "had already applied for the passport, and afterwards" submitted a "second application to expedite the process." The Government countered: the expedited application must have been submitted before April because the passport was issued in February. Kumar then explained that Congress Party members had been delivering threats at his house, and those drove him to apply for a passport. The Government countered: Kumar did not join the opposition party until March 2006, a month after the passport was issued. Kumar then explained that his family had applied for the passport on his behalf without consulting him, and that he did not remember this earlier. A reasonable adjudicator would not be compelled to credit this explanation. *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005).

The IJ found that Kumar's demeanor was questionable during this exchange. "[T]he IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant," and so we generally defer to demeanor findings. *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004), *overruled*

4

*on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007). That is particularly so if the demeanor finding is "supported by specific examples of inconsistent testimony." *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 109 (2d Cir. 2006). Here, the demeanor finding was supported by Kumar's inconsistent testimony about his passport: the IJ observed that when the Government confronted Kumar about the date of his passport, Kumar's "demeanor changed noticeability. He looked quite anxious and dejected."

In his brief to this Court, Kumar asserts that the IJ overlooked that Kumar had to testify through a Punjabi interpreter about events that occurred seven years earlier. He attributes the inconsistencies regarding his passport to "the normal limits of human understanding and memory." Kumar did not testify to that effect at his hearing, and "an attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009). Regardless, even if Kumar had offered the explanation, the agency would not have been compelled to credit it. *Majidi*, 430 F.3d at 80.

The IJ also found that Kumar's testimony was implausible (albeit without using that precise term). "The point at which a finding that testimony is implausible ceases to be sustainable as reasonable and, instead, is justifiably labeled 'speculation,' in the absence of an IJ's adequate explanation, cannot be located with precision," but as a general matter, such a finding should be upheld unless we are "left with the definite and firm conviction that a mistake has been committed." *Ming Xia Chen v. BIA*, 435 F.3d 141, 145 (2d Cir. 2006) (internal citation omitted). Here, the agency committed no mistake because the IJ's finding was "tethered to record evidence." *Wensheng Yan v. Mukasey*, 509 F.3d 63, 67 (2d Cir. 2007). Kumar testified that if returned to India, he would continue to "speak out" politically; he admitted, however, that he is in no way politically active in the United States. Kumar's political activities were limited to a two-month period (March and April 2006) and did not include voting. He said he was unaware of the 2009 elections in India explaining that he "didn't pay attention." Given this testimony and Kumar's assertion that

6

he will be targeted based on his political beliefs, the agency was justified in finding his claim implausible.

The agency also cited inconsistencies between Kumar's testimony and his party secretary's letter. Kumar testified that between March and April 2006, he attended two or three rallies to attract new members to the party. By contrast, the party secretary's letter stated that Kumar "took part in many rallies, protest march and demonstration [sic]. . . against police brutality, for promoting our agenda for achievement of Khalistan." When pressed about the significance of Khalistan, moreover, Kumar foundered. He understood Khalistan to be a place where Muslims, Hindus, Sikhs, and Christians can live together under the leadership of India, and he had never heard of the idea that Khalistan would become an independent nation. But his party secretary's letter spoke of the "formation of Khalistan," and Kumar's own documentary evidence included a Wikipedia entry about the secessionist movement to create a separate Sikh state called Khalistan. This disconnect further supported the agency's adverse credibility determination.

7

Because the only evidence of a threat to Kumar depended on his credibility, the agency's finding that he was not credible necessarily precludes success on his claims for asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

Kumar argues that the credibility determination did not defeat his CAT claim. He points to the State Department's country reports on human rights in India, which, in his view, indicate that it is "a very corrupt society and country where political parties like the Congress party control the Indian police and commit major human rights violations."

The agency "may not deny an alien's CAT claim solely on the basis of its determination that the applicant's testimony is not credible." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 184 (2d Cir. 2004). But that is true only if the alien's CAT claims are "analytically separate from [his] asylum claims." *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 523 (2d Cir. 2005). In a case like this one, however, in which the fear of torture is based on past activity that has been found not to be credible,

the adverse credibility determination is dispositive. *Paul v. Gonzales*, 444 F.3d at 156-57.

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9