Balde v. Sessions

BIA
Christensen, IJ
A200 819 193

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of June, two thousand seventeen.

PRESENT:
        DENNIS JACOBS,
        GERARD E. LYNCH,
        RAYMOND J. LOHIER, JR.,
            *Circuit Judges.*
_____

MAMADOU-SOTO BALDE,
        *Petitioner,*

        v.                                      15-3980
                                                NAC
JEFFERSON B. SESSIONS III, UNITED
STATES ATTORNEY GENERAL,
        *Respondent.**
_____

FOR PETITIONER:          Andy Wong, Washington, D.C.

FOR RESPONDENT:          Benjamin C. Mizer, Principal Deputy
                         Assistant Attorney General; Stephen
                         J. Flynn, Assistant Director; Imran

---

* The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

R. Zaidi, Attorney; Tiffany L. Donohue, Law Clerk, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Mamadou-Soto Balde, a native and citizen of Guinea, seeks review of a December 2, 2015 decision of the BIA affirming a July 31, 2014 decision of an Immigration Judge ("IJ") denying Balde's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mamadou-Soto,* No. A200 819 193 (B.I.A. Dec. 2, 2015), *aff'g* No. A200 819 193 (Immig. Ct. N.Y. City July 31, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA (i.e., considering only those grounds for the credibility determination that the BIA reached). *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008).

2

The governing REAL ID Act credibility standard provides that the agency must "[c]onsider[] the totality of the circumstances," and may base a credibility finding on an applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his or his witness's statements, "without regard to whether" they go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *see Xiu Xia Lin*, 534 F.3d at 163-64. "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. Further, "[a] petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotations marks omitted). As discussed below, substantial evidence supports the agency's determination that Balde was not credible.

First, the agency did not err by relying on Balde's credible fear interview record. We have held that a credible fear interview warrants "close examination" because it may "be perceived as coercive" by the alien or fail to "elicit all of

3

the details supporting an asylum claim." *Ming Zhang v. Holder*, 585 F.3d 715, 724-25 (2d Cir. 2009). But "[w]here the record of a credible fear interview displays the hallmarks of reliability, it appropriately can be considered in assessing an alien's credibility." *Id*. at 725. The interview here exhibited many of the hallmarks of reliability we have identified. *See* id. (citing *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004)). A French interpreter was used (and Balde listed French on his asylum application as a language he spoke fluently); the interviewer asked Balde questions designed to elicit an asylum and CAT claim; the questions and answers were memorialized in a typewritten document; and at no point did Balde appear to have difficulty answering the interviewer's questions. Because the record of the interview is reliable, the agency was entitled to consider it in assessing Balde's credibility. *Id*. Balde argues that the BIA ignored his arguments as to why the interview record is unreliable. While the BIA did not specifically address each of Balde's arguments, these same arguments were rejected by the IJ, and the BIA reasonably affirmed the IJ's conclusion that the interview record was reliable.

Second, the agency reasonably relied on the inconsistency between Balde's credible fear interview statements and testimony

4

about his involvement with the Union of Democratic Forces of Guinea ("UFDG"). *See Xiu Xia Lin*, 534 F.3d at 163-64. During his interview, Balde was asked whether he held "any position or title within [the UFDG]," and he responded that he "was a simple militant and member of the party." Balde testified, however, that he held a "position" in the party as "the secretary for information in the Dixinn community." When asked about this discrepancy, Balde responded that the asylum officer "did not ask [him] what position [he held] or whether [he] held a position with [the] party." The IJ reasonably rejected this explanation because it was contradicted by the interview record. *Majidi*, 430 F.3d at 80.

Third, the agency reasonably relied on the inconsistencies among Balde's credible fear interview, testimony, and asylum application about whether he was ever physically harmed in Guinea. *See Xiu Xia Lin*, 534 F.3d at 163-64. Balde responded "No" when asked during his credible fear interview if he had ever been "harmed or mistreated" or "beaten or tortured" in Guinea. In his asylum application, however, Balde stated that he was beaten with rubber batons by the military at a strike protest, and he testified that he was beaten with sticks and guns. When confronted with these discrepancies, Balde responded that he began to explain to the asylum officer what

5

happened, but that the officer directed him to answer with only yes or no.  The IJ was not compelled to accept this explanation because, as the IJ observed, the transcript of the record shows that Balde gave comprehensive answers beyond "yes" or "no" several times during his interview, and Balde's explanation also does not account for why he did not answer "Yes" when asked during his interview if he had ever been harmed or beaten.  *See Majidi*, 430 F.3d at 80.

Fourth, the agency reasonably relied on the inconsistencies between Balde's testimony and asylum application regarding how he obtained the incriminating videos of the military.  *See Xiu Xia Lin*, 534 F.3d at 163-64.  In his asylum application, Balde stated that he obtained videos of the military killing members of the political opposition at the stadium in Conakry because he owned an internet café and several people who witnessed the massacre came there to upload their videos.  However, Balde testified that he obtained the videos from members of the military who came to his internet café, and he later testified that he filmed some of the videos himself.  When asked about these discrepancies, Balde responded that he did not state in his application that he filmed some of the videos because he was not asked and that the videos he was referring to in his application were filmed on a different day than the massacre.

The IJ was not compelled to accept these varying explanations. *See Majidi*, 430 F.3d at 80.

In his brief, Balde asserts several new explanations for the inconsistencies cited above. However, we decline to consider these explanations because they were not presented to the IJ or BIA. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 122 (2d Cir. 2007).

Finally, the agency reasonably found Balde's corroborating evidence insufficient to rehabilitate his credibility because his supporting letters were inconsistent with his testimony and their authors were not available for cross-examination. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) (an applicant's failure to corroborate testimony may bear on credibility, either because the absence of particular evidence is viewed as suspicious, or "because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question"). Balde does not meaningfully challenge this finding in his brief and has therefore waived review of the agency's bases for discounting his evidence. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Given the foregoing inconsistencies among Balde's testimony, asylum application, and credible fear interview, and his insufficient corroboration, the totality of the circumstances supports the agency's credibility ruling. *Xiu Xia Lin*, 534 F.3d at 165-66. A reasonable adjudicator would not be compelled to conclude otherwise. *Id.* at 167. The credibility finding is dispositive of asylum, withholding of removal, and CAT relief because all three claims are based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk