16-3437-ag
*Kulmatov v. Whitaker*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of November two thousand eighteen.

PRESENT:    JOSÉ A. CABRANES,
            ROBERT D. SACK,
                    *Circuit Judges*,
            JOHN G. KOELTL,
                    *District Judge.*[*]

---

ELDAR KULMATOV, VERA DERYABINA,

        *Petitioners*,                                    16-3437-ag

        v.

MATTHEW G. WHITAKER, ACTING UNITED STATES
ATTORNEY GENERAL,

---

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

*Respondent.*†

FOR PETITIONERS:                    H. RAYMOND FASANO, Youman, Madeo
                                    & Fasano, LLP, New York, NY.


FOR RESPONDENT:                     SHARON M. CLAY, Trial Attorney, Office
                                    of Immigration Litigation (Chad E.
                                    Readler, Acting Assistant Attorney
                                    General, and Nancy Friedman, Senior
                                    Litigation Counsel, *on the brief*), Civil
                                    Division, U.S. Department of Justice,
                                    Washington, DC.

Petition for review of a September 13, 2016 order of the Board of Immigration Appeals.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition be and hereby is **DENIED**.

## I.

Petitioners Eldar Kulmatov ("Kulmatov") and Vera Deryabina (jointly, "Petitioners") petition for review of an order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an order of removal of an immigration judge. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## II.

## A.

We review the BIA's conclusions of law de novo and its findings of fact for substantial evidence. *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). Under the substantial-evidence standard, the BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Majidi v. Gonzales*, 430 F.3d 77, 79 (2d Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).

---

† Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Matthew G. Whitaker is automatically substituted for former Attorney General Jefferson B. Sessions III, as Respondent.

B.

1.

Petitioners argue that the BIA lacked substantial evidence for its determinations that Kulmatov had not suffered past persecution and did not have a well-founded fear of future persecution on account of his partial Uzbek ethnicity and was therefore ineligible for asylum. The BIA rested these determinations in part on a further determination that Petitioners had failed to prove that the government of Kyrgyzstan, the country from which Kulmatov originated, was unable or unwilling to protect Kulmatov from persecution.

"To establish eligibility for asylum, an applicant must show that he or she is a refugee who has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or has a well-founded fear of persecution on one of these grounds." *Aliyev v. Mukasey*, 549 F.3d 111, 116 (2d Cir. 2008) (citing 8 U.S.C. § 1101(a)(42); *Islami v. Gonzales*, 412 F.3d 391, 394 (2d Cir. 2005), *overruled in part on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 305 (2d Cir. 2007)). If the alleged past persecution or well-founded fear of future persecution stems from acts of private persons, the applicant must still prove that the government of the country from which he or she has fled is unable or unwilling to protect him or her from persecution. *See id.*

We conclude that the BIA's determinations rest on substantial evidence because we do not think "any reasonable adjudicator would be compelled" to find that the Kyrgyz government was or is unable or unwilling to protect Kulmatov from persecution. *Majidi*, 430 F.3d at 79.

The evidence to support the Kyrgyz government's alleged inability or unwillingness to protect Kulmatov consists mainly of Kulmatov's testimony about two episodes of violence committed against him in Bishkek, the capital of Kyrgyzstan, by private persons; a corroborating written statement made by Kulmatov's mother; and several news articles and research reports about conditions in Kyrgyzstan, including two reports issued by the Department of State. Kulmatov's testimony and his mother's written statement include assertions that both episodes of violence were reported to the police but that the perpetrators were never apprehended. Kulmatov testified that after the first episode he had given the police descriptions of the perpetrators along with their car license plate number but did not know their names or addresses; after the second episode the police reportedly lacked enough information to identify the perpetrators. The news articles and research reports, for their part, discuss various forms of Kyrgyz government abuses, including incidents of serious mistreatment of Uzbeks in the southern part of Kyrgyzstan.

This evidence is arguably equivocal about the capacities and intentions of the Kyrgyz state. But we do not think that it compels a reasonable adjudicator to find that Kyrgyzstan was or is

3

unable or unwilling to protect Kulmatov.[1] One could conclude from the evidence of the Kyrgyz authorities' efforts after the two episodes of violence that the authorities had been derelict and "unwilling" to protect Kulmatov. But one could conclude with equal plausibility that they simply did not have enough information to identify the assailants. Similarly, one might infer from reports of mistreatment of Uzbeks in southern Kyrgyzstan that Uzbeks were being persecuted in the northern capital region and that the Kyrgyz authorities were therefore "unable" to protect Kulmatov. But one might also infer, with somewhat greater plausibility, that Uzbeks were not being subjected to such abuses in the capital city of Bishkek, where Kulmatov was living; otherwise the reports would have mentioned Bishkek or the capital region.[2]

2.

Petitioners also argue that the BIA "erroneously declined to remand despite overturning the [immigration judge's] nexus determination," Br. Pet'rs 15, and that the episodes of violence against Kulmatov are comparable to mistreatment that was held in two other cases to constitute persecution. We do not need to consider these arguments because, as we have already concluded,

---

[1] In a letter submitted pursuant to Fed. R. App. P. 28(j), and dated October 11, 2018, Kulmatov argues that the BIA erroneously applied the "unable or unwilling" standard based on his interpretation of a First Circuit case: *Justo v. Sessions*, 895 F.3d 154 (1st Cir. 2018). *Justo* clarified that "the inquiry into whether there is a government nexus must include separate consideration of the evidence of unwillingness and the evidence of inability." *Id.* at 164 n.8. Kulmatov argues that the BIA conflated its analysis of unwillingness and inability. We disagree. The BIA thoroughly examined the Kyrgyz government's willingness to protect Kulmatov from persecution, including the investigatory actions taken by the police and the Ministry of Internal Affairs. The BIA's "ability" analysis, albeit concise, turned on the fact that Kulmatov could not identify his assailants, thereby stymying any investigatory efforts. And unlike *Justo*, the country condition reports, discussed *infra*, do not conclusively establish that the Kyrgyz police were unable to protect Kulmatov under the specific facts of his case. *Cf. id.* at 165 (finding country condition reports "particularly probative" where they "specifically addressed the failure of the police in [the petitioner's] home state" and where they "closely mirrored the specific circumstances described by [the petitioner]").

[2] Petitioners repeatedly allege that the BIA failed to give adequate attention to the articles and reports about mistreatment of Uzbeks. That the BIA in fact did consider this part of the record is indicated by the references in its decision to the immigration judge's discussion of the articles and reports, to the human rights report of the Department of State, and to accounts of the violence in southern Kyrgyzstan. *See* R. 5 ("While the respondent's evidence of country conditions in Kyrgyzstan reflects violent ethnic clashes between ethnic Uzbeks and ethnic Kyrgyz in mid-2010 as well as continued ethnic tension and discrimination against ethnic Uzbeks, the evidence did not reflect a pattern or practice of persecution of ethnic Uzbeks (I.J. at 9, 11–13 & n.3; Exh. 5(J) at 37–70, 103–05, 122–27).").

Petitioners have failed to prove that the Kyrgyz government was or is unable or unwilling to protect Kulmatov and thus cannot carry their burden of proving that Kulmatov was persecuted or has a well-founded fear of future persecution.

3.

Petitioners argue separately that the BIA erred when it deemed them to have waived any argument against the immigration judge's denial of their application for relief under the Convention Against Torture. When the BIA has held that an issue has been waived, "this Court's review is limited to whether the BIA erred in deeming the argument waived." *Prabhudial v. Holder*, 780 F.3d 553, 555–56 (2d Cir. 2015). In this case, we conclude that the BIA did not err because, like the BIA, we see nothing in Petitioners' submission to the BIA raising the issue of their eligibility for relief under the Convention Against Torture.

**CONCLUSION**

For the foregoing reasons Petitioners' petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk