Abid v. Barr

BIA
Christensen, IJ
A206 228 816

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of December, two thousand twenty.

PRESENT:
            DEBRA ANN LIVINGSTON,
                    *Chief Judge,*
            PIERRE N. LEVAL,
            STEVEN J. MENASHI,
                    *Circuit Judges.*
_____

MUHAMMAD NOMAN ABID,
        *Petitioner,*

        v.                                            18-520
                                                      NAC
WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,
        *Respondent.*
_____

FOR PETITIONER:            Anas J. Ahmed, Esq., New York, NY.

FOR RESPONDENT:            Joseph H. Hunt, Assistant Attorney
                           General; Carl McIntyre, Assistant
                           Director; Virginia Lum, Trial

Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Muhammad Noman Abid, a native and citizen of Pakistan, seeks review of a January 24, 2018, decision of the BIA affirming a November 9, 2016, decision of an Immigration Judge ("IJ") denying Abid's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Muhammad Noman Abid,* No. A 206 228 816 (B.I.A. Jan. 24, 2018), *aff'g* No. A 206 228 816 (Immig. Ct. N.Y. City Nov. 9, 2016). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (reviewing adverse credibility determination for substantial evidence).

2

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

"[A]dverse credibility determinations based on 'discrepancies' with a credible fear interview should be examined with care." *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009) (citing *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180-81 (2d Cir. 2004)). But "[w]here the record of a credible fear interview displays the hallmarks of reliability, it appropriately can be considered in assessing

3

an alien's credibility." *Id.* "Hallmarks of reliability" include whether the interview is a typewritten list of questions and answers, whether it demonstrates that the applicant understood the questions and reflects questions about past harm or fear of future harm, and whether it was conducted with an interpreter. *Id.*

The agency properly relied on Abid's credible fear interview because the interview record was reliable. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). The "hallmarks of reliability" listed in *Ming Zhang* are present here: the interview was conducted with an interpreter in a language Abid said he understood; Abid had retained counsel but declined to have his attorney present; it is memorialized in a question-and-answer format; the questions posed were designed to elicit details of an asylum claim; and Abid's responses indicated that he understood the questions. 585 F.3d at 725. Further, Abid's counsel did not object when the IJ admitted the interview record into evidence.

Because the record of the credible fear interview was reliable, substantial evidence supports the agency's determination that Abid was not credible as to his claim of political persecution. *See Xiu Xia Lin*, 534 F.3d at 165-66.

4

Abid was inconsistent with his credible fear interview about when a rival political party member threatened him, and he omitted the murders of his seven cousins during that interview. Abid was not confronted with the inconsistency, but because it was obvious, was about when Sadiq first threatened him, and related to the date of the elections during which Abid claimed to have been active, the agency was permitted to rely upon it as part of the totality of the circumstances. *See Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005) ("Nor have we ever required that an IJ, when faced with inconsistent testimony of an asylum applicant, must always bring any apparent inconsistencies to the applicant's attention and actively solicit an explanation."); *Ming Shi Xue v. BIA*, 439 F.3d 111, 114 (2d Cir. 2006) (IJ need not solicit explanations for "inconsistencies that are 'dramatic'—that is, sufficiently conspicuous and central to the applicant's claim as to be self-evident").

As for the omission, Abid first testified that he told the asylum officer that his cousins had been murdered, but then claimed that he had wanted to tell the officer but did not because she had instructed him only to answer the questions she asked. He explained that he was nervous and

was not as comfortable with the Urdu interpreter because he speaks Punjabi better than Urdu. These explanations are not compelling because the credible fear record demonstrates that the asylum officer asked probing questions to elicit more details, including a final question asking Abid if he wanted to add anything else that had not been covered during the interview. *See Majidi*, 430 F.3d at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be compelled to credit his testimony." (internal quotations omitted)).

Concerning the officer's directive to answer the questions asked, she said this twice after Abid was unresponsive to questions; it was not a command to limit his answers but rather a request to address what was being asked of him. While it is plausible that Abid was stressed during his interview (which the IJ recognized), stress does not explain why he was able to tell the officer that Nawaz Party members harmed him twice and threatened him four to five times but unable to include a major part of his claim: that they also killed seven of his family members when trying to shoot him. Abid's claim that he did not completely understand the

Urdu interpreter at his credible fear interview (and his border interview as discussed below) because he speaks Punjabi better than Urdu does not explain his omissions and inconsistencies because he requested an Urdu interpreter for his interviews, and he indicated in his subsequent asylum application that Urdu was his native language.

We recognize that the agency may err if it relies too heavily on minor omissions, at least where the omitted information would have supplemented, rather than contradicted, earlier statements, but the agency did not err here because Abid's omission—the murder of his seven cousins—concerned a major event that was central to his claim of persecution. *See Ming Zhang*, 585 F.3d at 726 (holding that the agency may "draw an adverse inference about petitioner's credibility based, inter alia, on h[is] failure to mention" important details or events in prior statements). Further, the agency did not rely solely on this omission but rather noted it in combination with other inconsistencies. *See Hong Fei Gao*, 891 F.3d at 78, 82 (holding that "the probative value of a witness's prior silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose" and that

7

"[o]missions need not go to the heart of a claim to be considered in adverse credibility determinations, but they must still be weighed in light of the totality of the circumstances and in the context of the record as a whole").

The agency also reasonably found that Abid's testimony and asylum application were inconsistent with his border interview as to the motive of his persecutors. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Abid testified and wrote in his application that members of the Nawaz Party, including a man named Danish Sadiq, threatened and tried to kill him (and in the process, killed seven of his cousins) because of his political work with the rival Quaid Party. But he previously told a border patrol agent that he feared returning to Pakistan because his "family was threatened by a man who is known to have killed eight people in [his] village to take [his family's] land." There is no copy of this border interview in the record, but Abid did not contest the Department of Homeland Security ("DHS") attorney's characterization during cross-examination that he told the border patrol officer that he had been targeted because of a land dispute; he explained that he did not mention his persecutors' political motives because "the lady who was

8

interviewing me, she was asking me and telling me to answer only what she was asking." This explanation was not compelling because the question[1] that the border patrol agent asked was a broad one designed to solicit the basis for his fear, and Abid never mentioned land disputes he had with the Nawaz Party in his subsequent asylum application and testimony until confronted. *See Majidi*, 430 F.3d at 80; *see also Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 295 (2d Cir. 2006) (holding that "material inconsistency in an aspect of [an applicant's] story that served as an example of the very persecution from which he sought asylum . . . afforded substantial evidence to support the adverse credibility finding." (internal quotation marks and citation omitted)).

Finally, the agency properly found that Abid was inconsistent about whether he returned home after the June 15, 2013 shooting. Abid's explanation that he was hiding in his large house did not resolve this inconsistency. *See Majidi*, 430 F.3d at 80.

---

[1] According to the DHS attorney during cross-examination, the border agent asked Abid, "If you are sent back to your country, do you fear that you will be persecuted or tortured?" Abid said he recalled the question from his border interview.

Having questioned Abid's credibility, the agency reasonably relied on his failure to rehabilitate his testimony with reliable corroborating evidence. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). The IJ determined that Abid's witness was not reliable, and he has not challenged that determination. Abid submitted affidavits from relatives, his party membership card, warrants for his arrest, numerous police reports and statements, information about his father's political activities and alleged political persecution, and death reports of his family members. The agency did not err in declining to afford significant weight to these documents because the authors of the affidavits, issuer of the party membership card, and persons who provided statements to the police were not available for cross-examination; his family members were interested parties; and the police and government documents were not authenticated. *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to

10

be afforded an applicant's documentary evidence."); *see also In re H-L-H- & Z-Y-Z-*, 25 I. & N. Dec. 209, 214 n.5, 215 (BIA 2010) (finding that unsworn letters from friends and family were insufficient to provide substantial support for claims because they were from interested witnesses not subject to cross-examination and noting that the "failure to attempt to prove the authenticity of a document through [8 C.F.R. § 1287.6] or any other means is significant"), *overruled on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130, 133–38 (2d Cir. 2012).

Accordingly, given the record inconsistencies, the credible fear interview omission, and the lack of reliable corroboration, the adverse credibility determination is supported by substantial evidence. *See Xiu Xia Lin*, 534 F.3d at 165–66. The adverse credibility determination was dispositive of asylum, withholding of removal, and CAT relief because all three forms of relief were based on the same discredited factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

11

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court